# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

NEWYORK.COM INTERNET
HOLDINGS, INC., individually and
derivatively on behalf of
NewYork.com Entertainment Group, LLC

        Plaintiff,

        v.

ENTERTAINMENT BENEFITS
GROUP, LLC; BRETT D. REIZEN;
TICKETSATWORK – PLUM
BENEFITS, LLC; ENTERTAINMENT
BENEFITS GROUP, INC.; and
JOHN DOES 1-10

        Defendants,

    and

NEWYORK.COM ENTERTAINMENT
GROUP, LLC,

        Nominal Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 10206-VCP

---

ENTERTAINMENT BENEFITS
GROUP, LLC,

        Counterclaim Plaintiff,
        Defendant

        v.

NEWYORK.COM INTERNET
HOLDINGS, INC.

        Counterclaim Defendant,
        Plaintiff.

**MEMORANDUM OPINION**

Date Submitted: June 8, 2015
Date Decided:  July 8, 2015

Johnna M. Darby, Esq., HILLER & ARBAN, LLC, Wilmington, Delaware; Brett E. Lewis, Esq., David D. Lin, Esq., Justin Mercer, Esq., LEWIS & LIN, LLC, Brooklyn, New York; *Attorneys for Plaintiff NewYork.com Internet Holdings, Inc.*

Michael F. Bonkowski, Esq., COLE SCHOTZ P.C., Wilmington, Delaware; Beth I.Z. Boland, Esq., Courtney Worcester, Esq., FOLEY & LARDNER LLP, Boston, Massachusetts; Angelica L. Boutwell, Esq., FOLEY & LARDNER LLP, Miami, Florida; *Attorneys for Defendants Entertainment Benefits Group, LLC, Brett Reizen, Ticketsatwork-Plum Benefits, LLC, and Entertainment Benefits Group, Inc.*

**PARSONS, Vice Chancellor.**

This is a dispute between the two members of a single-asset limited liability company that owns the domain name NewYork.com. Each owner has a fifty percent interest in the company. The plaintiff alleges that the board is deadlocked and seeks dissolution. The defendant, in response, counterclaims for a declaratory judgment that it is entitled to purchase the plaintiff's units in the LLC and for breach of the company's operating agreement. The plaintiff has moved to strike portions of the defendant's counterclaim, or, in the alternative, to dismiss the counterclaim in its entirety. For the reasons that follow, the motion to strike is granted in part and denied in part. The motion to dismiss is denied.

## I. BACKGROUND[1]

### A. The Parties

Plaintiff, NewYork.com Internet Holdings, Inc. ("NYIH"), is a Delaware corporation whose principals are the original registrants of the domain name <NewYork.com>. NYIH owns a fifty-percent interest in NewYork.com Entertainment Group, LLC ("NYEG" or the "Company"), which is the current holder of all rights and title to NewYork.com.

Defendant Entertainment Benefits Group, LLC ("EBG") is a Delaware limited liability company in the business of selling and marketing tickets for travel and entertainment events. EBG owns the remaining fifty-percent interest in the Company.

---

[1] Unless otherwise noted, the facts recited herein are drawn from the well-pled allegations of the Verified Derivative Complaint ("the Complaint") and the Verified Counterclaim ("the Counterclaim"), together with their attached exhibits.

1

## B. Facts

### 1. The sale and formation of the new entity NYEG

NewYork.com is a website for the sale and marketing of tickets for travel and entertainment events in New York. The original registrants of this domain name are principals of Plaintiff, NYIH, which was founded in 2009. Defendant EBG alleges that, even though NewYork.com is a highly valuable domain name, NYIH struggled to make the site a success.

In 2011, NYIH was introduced to EBG and its president, Brett Reizen. EBG, at the time, allegedly was one of the largest privately held travel and entertainment providers in the United States and had a proven track record of developing successful and innovative entertainment destination websites and sales channels. After negotiations, NYIH agreed to sell a fifty-percent interest in NewYork.com to EBG for approximately $1,750,000.

On January 11, 2012, NYIH and EBG entered into an Asset Purchase Agreement.[2] Pursuant to this agreement, NYIH and EBG formed a third entity, NYEG, which acquired one-hundred percent of NewYork.com, including the website, the trade name, and all intellectual property rights.

_____

[2] Countercl., Ex. B.

## 2. The Operating Agreement

On the same day, the parties also executed a Limited Liability Company Agreement (the "Operating Agreement").[3] Pursuant to the Operating Agreement, NYIH and EBG each own fifty percent of the membership interests of the Company. The Board of Managers (the "Board") is comprised of two members: Tom Stafford of NYIH and Brett Reizen of EBG.

The Operating Agreement provides EBG with the "exclusive authority to manage the routine day to day operations and affairs of the Company and to make all decisions regarding the business of the Company, except as otherwise expressly provided."[4] NYIH asserts that the Board is authorized to, among other things, supervise the preparation of and approve an annual business plan, including a description of the strategy and operations of the Company, determine the location of the principal office, make hiring decisions of officers and key employees, request additional financing for the Company, determine the method of accounting by which the Company's books of account shall be kept, and select an independent public accounting firm to be the Company's independent auditor.

The Operating Agreement also defines a set of so-called "Triggering Events." If NYIH commits such an event, NYIH is deemed to have offered its fifty-percent interests in the Company to EBG at a price calculated based on a specific formula provided in the

---

[3]     Countercl., Ex. A [hereinafter "Operating Agreement"].

[4]     *Id.* §§ 6.1, 6.10.

3

Operating Agreement.[5]  Section 10.1 of the Operating Agreement provides a list of eight different categories of Triggering Events, two of which are relevant here.  First, under Section 10.1.5, NYIH commits a Triggering Event if NYIH or Stafford "engage[s] in any activities, events or conduct which, in EBG's reasonable opinion, reflects unfavorably on the good name, goodwill or reputation of the Company or EBG or any of their respective Affiliates."[6]  Second, under Section 10.1.4, NYIH is deemed to have committed a Triggering Event if NYIH breaches any of its obligations under the Operating Agreement.

### 3.    EBG relaunches NewYork.com and freezes out NYIH

According to the Counterclaim, after execution of the Operating Agreement, EBG completely redesigned and rebuilt NewYork.com, and implemented a brand new and customized content management system to improve and expand the content of the website.  The redesigned website allegedly made it possible for users to purchase tickets directly on the site rather than linking to the site of an affiliate where the purchase would occur.  Relaunch of the website occurred in October 2012 and significantly increased the website traffic and revenues.  EBG avers that the transactional net revenue grew by over 700% to approximately $111,000 per month in 2013 as compared to 2012.

Although the relaunched website generated higher revenues, NYIH alleges that the Company's operating costs far exceeded revenues, resulting in the loss of millions of dollars.  For example, EBG posted a loss of approximately $1,500,000 for calendar year

---

[5]    *Id*. §§ 10.1-10.2.

[6]    *Id.* § 10.1.5.

4

2013. NYIH further asserts that it was unable to verify these figures because EBG denied it access to the full books and records of the Company.

NYIH served EBG with a written demand for books and records on August 8, 2014, and again on August 26. Both demands were denied, despite the fact that the Operating Agreement expressly provides that "holders of the Units and their respective duly authorized representatives shall have the right to examine the Company books, records and documents."[7] Based on EBG's refusal to provide financial records, NYIH avers that EBG may have engaged in financial improprieties to create artificial losses and loan obligations.

In addition to its refusal to provide financial records, EBG allegedly excluded NYIH from all decisions of the Company. NYIH asserts that even though Stafford, as NYIH's designee to NYEG's Board, has the authority under the Operating Agreement to make decisions on matters such as hiring or firing officers and key employees, approving annual business plans, and obtaining additional financing for the Company, he never was consulted or allowed to provide any input on such decisions and even has been denied access to the Company's office. In fact, according to the Complaint, no Board meetings have been held since the formation of the Company, notwithstanding NYIH's requests.

The Operating Agreement requires the two members of the Board to cooperate in order to address any issue faced by the Company that is within the Board's purview. The Board cannot act on such matters, however, unless both members agree on a course of

---

[7] *Id.* § 15.1.

action.[8]  Because NYIH allegedly has been precluded from participating in any decisions, NYIH asserts that the NYEG Board is dysfunctional and deadlocked.  In an effort to resolve their dispute, the parties participated in an eight-hour mediation in July 2014, but it was unsuccessful.  EBG claims that Stafford behaved inappropriately and in a hostile manner at the mediation conference, thereby committing a Triggering Event.

### 4.       Stafford's and NYIH's allegedly inappropriate conduct

Stafford allegedly has behaved in a rude and unprofessional manner that, in EBG's view, has reflected negatively on the good name, goodwill, and reputation of the Company or EBG.

First, EBG asserts that Stafford has jeopardized the Company or EBG's relationship with their third party information technology provider because he repeatedly made profane and abusive comments to the vendor.  For example, after experiencing difficulties with his NewYork.com email in November 2012, Stafford wrote a profane email to the IT provider in which he told them that "I can't believe you guys totally f[---]ed up my tom@newyork.com email address."[9]  When Reizen advised Stafford to communicate in a professional and courteous manner, Stafford responded with further vulgarities.

Second, EBG accuses Stafford of behaving unprofessionally at a meeting that took place at the Company's office in New York in the fall of 2013.  Both members of the Board, along with other employees, attended the meeting to discuss the Company's 2014

---

[8]      *Id.* §§ 6.4.3, 6.6.

[9]      Countercl., Ex. C.

budget. As the discussions became more heated, Stafford started to yell at Reizen so loudly that the receptionist could hear it through a closed door. Ultimately, Stafford refused to speak to Reizen or shake his hand.

Third, before the mediation, Stafford allegedly disclosed to a former employee of the Company that: (1) he and NYIH had a dispute with EBG and were unhappy with the way that EBG was running the Company; (2) EBG was "being secretive and not fully informing NYIH of all the operational details of [the Company]";[10] and (3) NYIH might take legal actions against EBG. Stafford further requested that the ex-employee disclose to him information about the Company's operations.

Finally, in August 2013, Leland Hardy, a co-owner of NYIH, brought retired professional basketball player Damon Stoudamire to NYEG's office. Stoudamire identified himself, purportedly incorrectly, to the Company's Site Director and EBG's Vice President of Marketing and Director of Business Intelligence as an investor in NewYork.com. He allegedly also asked to inspect NYEG's books and records and other confidential information.

### C. Procedural History

On October 7, 2014, NYIH initiated this litigation with a six-count Verified Complaint against EBG and a number of other defendants, seeking to dissolve NYEG (Count I), and to obtain a declaration of NYIH's authority under the Operating Agreement (Count II), and to obtain relief for alleged breaches of the Operating Agreement for failure to produce the Company's books and records (Count III), alleging

---

[10]     *Id.* ¶ 43.

breaches of fiduciary duty (Count IV), and aiding and abetting of such fiduciary breaches (Count V), and further seeking an accounting (Count VI). In the Complaint, NYIH asserted claims against Reizen personally and other affiliates of EBG as well.

On November 17, 2014, EBG and three other defendants collectively filed a Motion to Stay Causes of Action Three through Six of the Complaint, or alternatively, a Motion to Dismiss the Complaint in its entirety. That motion, however, effectively was mooted by NYIH's reported decision to file a more narrow amended complaint.[11] Defendant's motion, therefore, is denied without prejudice in a separate order and is not addressed in this Memorandum Opinion.

Also on November 17, EBG filed its Answer and Verified Counterclaim (the "Counterclaim") against NYIH for: a declaratory judgment that NYIH or Stafford has engaged in conduct that constitutes a Triggering Event under Sections 10.1.4 and 10.1.5 of the Operating Agreement (Count I); and relief for alleged breaches of the Operating Agreement (Count II). In the second of these causes of action, EBG asserts that NYIH breached the Operating Agreement in the following three ways: (a) by failing to recognize EBG's alleged exclusive authority, under the Operating Agreement, to manage the operations of the Company;[12] (b) by disclosing confidential information to a third party—a former employee of NYEG—and, therefore, breaching Section 18.4 of the

---

[11] At argument, Defendants' counsel advised the Court that NYIH planned to file an amended complaint that would eliminate some of the defendants and causes of actions specified in the original complaint. For that reason, Defendants requested that they be permitted to wait for the new complaint and then decide whether to renew a motion to stay or, alternatively, a motion to dismiss. *See* Arg. Tr. 5.

[12] Countercl. ¶ 64.

Operating Agreement;[13] and (c) by failing to notify EBG of the occurrence of the alleged Triggering Events and, therefore, violating Section 10.2.[14]

On December 8, 2014, NYIH filed a Motion to Strike portions of the allegations in EBG's sixty-nine paragraph Counterclaim under Court of Chancery Rule 12(f) on the ground that they contained confidential, prejudicial, immaterial, impertinent, or scandalous matters.[15] NYIH also filed a Motion to Dismiss both counts of EBG's Counterclaim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. After full briefing, I heard argument on NYIH's motions on June 8, 2015.

## II. ANALYSIS

### A. Motion to Strike Portions of the Counterclaim

NYIH moves to strike Paragraphs 7, 29, and 47 of EBG's Counterclaim. Pursuant to Rule 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[16] Motions to strike focus on the form of the pleading and not its substance.[17] These motions generally are disfavored and are "granted sparingly and only when clearly warranted with all doubt

---

[13]   *Id.* ¶ 65.

[14]   *Id.* ¶ 66.

[15]   In its motion, NYIH sought to strike Paragraphs 6-8, 28-33, 43, and 47 of EBG's Counterclaim. Pl.'s Mot. to Strike and Mot. to Dismiss. At argument, however, NYIH narrowed its challenge to only Paragraphs 7, 29 and 47. Arg. Tr. 8.

[16]   Ct. Ch. R. 12(f).

[17]   *Salem Church Assocs. v. New Castle Cty.*, 2004 WL 1087341, at *2 (Del. Ch. May 6, 2004).

9

being resolved in the nonmoving party's favor."[18]  A motion to strike is granted if the challenged averments are: (1) not relevant to an issue in the case; and (2) unduly prejudicial.[19]

### 1.     Paragraph 47

NYIH moves to strike Paragraph 47 of the Counterclaim on the ground that it discloses confidential information relating to the mediation conference.  In Delaware and elsewhere, "there is a strong public policy favoring confidentiality in all mediation proceedings," and that policy "prohibits the introduction into evidence of communications made in connection with mediation."[20]  The Court recognizes that "[m]any statements are made during typical mediation, often by parties who do not trust each other, and it would render hollow the promise of confidentiality if confidentiality was vitiated . . . ."[21]  "Without the expectation of confidentiality, parties would hesitate to propose compromise solutions out of concern that they would later be prejudiced by their disclosure."[22]

Paragraph 47 of EBG's Counterclaim describes certain of Stafford's conduct and language he used during a lengthy mediation between EBG and NYIH in an effort to

---

[18]     *Id.*

[19]     *Id.*

[20]     *United Health Alliance, LLC v. United Med., LLC*, 2013 WL 1874588, at *3 (Del. Ch. May 6, 2013).

[21]     *Princeton Ins. Co. v. Vergano,* 883 A.2d 44, 65 (Del. Ch. 2005).

[22]     *Wilm. Hospitality, L.L.C. v. New Castle Cty.*, 788 A.2d 536, 541 (Del. Ch. 2001).

10

resolve this dispute. NYIH seeks to strike this paragraph because it references communications made in connection with or during a confidential mediation and thereby violates the parties' Mediation Agreement. That Agreement states that "all information provided during the mediation session is without prejudice and will be inadmissible in any litigation or arbitration of the dispute."[23]

In response, EBG argues that Stafford's use of profanity and implicit threat of violence by allegedly saying "Let's take this outside" falls outside the scope of the confidentiality provision of the Mediation Agreement. According to EBG, that provision covers only "submissions, such as written statements or documents, to the mediator."[24] Furthermore, EBG contends that Paragraph 47 should not be stricken because it is one of the injurious acts committed by Stafford that, in EBG's reasonable opinion, reflects unfavorably on the good name, goodwill, or reputation of the Company, EBG and their respective affiliates, and, therefore, constitutes a Triggering Event under the Operating Agreement.

I agree with EBG that Stafford's conduct was crude. I do not consider it reasonably conceivably, however, that EBG could show that it reasonably believed that Stafford's conduct reflected sufficiently poorly on EBG or the Company itself as to give rise to a Triggering Event. Stafford's statements were made either in the presence of EBG's own employees or the mediator, who is precluded from disclosing any information related to the mediation. While Stafford's conduct reflects poorly on him, it

---

[23] Opening Br., Ex. A § 10.1.

[24] EBG's Answering Br. 19.

11

is not reasonably likely to reflect unfavorably on the good name, goodwill, or reputation of the Company or EBG. Furthermore, the parties made a mutual promise in their Mediation Agreement not to reveal any information provided during the mediation. For these reasons and in accordance with the strong public policy favoring confidentiality in mediation proceedings, I grant NYIH's motion to strike Paragraph 47 of the Counterclaim.

### 2. Paragraphs 7 and 29

In Paragraphs 7 and 29 of its Counterclaim, EBG sets forth background information about NewYork.com before EBG's investment and EBG's efforts to improve and promote the website thereafter. NYIH moves to strike these allegations on the ground that they serve no useful purpose other than to undermine the Court's perception of NYIH.

NYIH primarily relies on the case of *395 Associates, LLC v. New Castle County*.[25] There, the court granted a motion to strike abusive allegations in the appellant's brief, such as statements that the County Board of License, Inspection, and Review (the "County Board") was the "functional equivalent of an appointed group of monkeys" and that the County Board permitted "its attorney to interpret the grunts and groans of the ape members to reach whatever conclusions the attorney wishes based on the record."[26] The court in *395 Associates* understandably concluded that these statements "serve[d] no

---

[25] *395 Assocs., LLC v. New Castle Cty.,* 2005 WL 3194566 (Del. Super. Nov. 28, 2005).

[26] *Id.* at *2.

other purpose than to inflame, insult and offend, and ha[d] no legal 'value or relevancy' to the relief sought."[27]

In contrast, although Paragraphs 7 and 29 of the Counterclaim paint a negative picture of NYIH in terms of its unsuccessful operations of NewYork.com, the allegations are neither egregious nor materially prejudicial to NYIH. Also, the two challenged paragraphs provide contextual background information about the state of NewYork.com before the formation of NYEG and EBG's alleged efforts to improve the website and allegedly transform NewYork.com to a much more successful business. In that sense, both Paragraphs 7 and 29 are relevant to this dispute, at least by way of background.

Therefore, I conclude that NYIH has failed to meet the high bar necessary to strike these two paragraphs and, therefore, I deny NYIH's motion to strike Paragraphs 7 and 29 of the Counterclaim.

### B. Motion to Dismiss the Counterclaim

### 1. Standard of Review

NYIH requests, in the alternative, that EGB's Counterclaim be dismissed pursuant to Rule 12(b)(6). This Court may grant a motion to dismiss for failure to state a claim if a pleading does not assert sufficient facts that, if proven, would entitle the claimant to relief. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[28] That is, when considering such a motion, a court must

---

[27]    *Id.*

[28]    *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011) (footnote omitted).

"accept all well-pleaded factual allegations in the Complaint as true . . . draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[29] This reasonable "conceivability" standard asks whether there is a "possibility" of recovery.[30] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[31] Moreover, failure to plead an element of a claim precludes entitlement to relief and, therefore, is grounds to dismiss that claim.[32]

Generally, the court will consider only the pleadings on a motion to dismiss under Rule 12(b)(6). "A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint; or (2) the document is not being relied upon to prove the truth of its contents."[33]

### 2. Section 10.1 Triggering Event

NYIH seeks to dismiss both causes of action asserted in EBG's Counterclaim. EBG's first cause of action asks for a declaratory judgment that NYIH or Stafford has engaged in conduct that constitutes a Triggering Event under Sections 10.1.4 and 10.1.5

---

[29] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[30] *Id.* at 537 & n.13.

[31] *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[32] *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 972 (Del. Ch. 2000) (Steele, V.C., by designation).

[33] *Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013).

14

of the Operating Agreement. NYIH primarily argues that EBG's Counterclaim has failed to adequately allege that NYIH and Stafford's activities are sufficient to be a Triggering Event and, therefore, should be dismissed.

The Operating Agreement sets forth eight types of Triggering Events that, if committed by NYIH, would cause NYIH to offer to sell its fifty-percent interest in the Company to EBG at a price calculated based on a formula prescribed in the Operating Agreement.[34] The Operating Agreement further requires NYIH to inform EBG forthwith of the occurrence of any such Triggering Events.[35]

Two types of Triggering Events are at issue here. First, under Section 10.1.4, NYIH commits a Triggering Event if it breaches any of its obligations under the Operating Agreement. In that regard, EBG avers that NYIH has breached the Operating Agreement in three ways. Because NYIH also moves to dismiss the second cause of action of EBG's Counterclaim, which deals directly with NYIH's alleged breaches of the Operating Agreement, I will address the alleged breaches *infra* in the context of discussing the Counterclaim's second cause of action.

The second type of Triggering Event at issue concerns purported damages to the image of the Company and EBG as referred to in Section 10.1.5. Under that section, a Triggering Event would include "NYIH or Thomas Stafford engaging in any activities, events or conduct which, in EBG's reasonable opinion, reflects unfavorably on the good

---

[34] Operating Agreement §§ 10.1-10.2.

[35] *Id.* § 10.2.

15

name, goodwill, or reputation of the Company or EBG or any of their respective Affiliates."[36]

EBG, in its Counterclaim, sets forth a series of acts that, in its opinion, have reflected negatively on its or the Company's good name, goodwill, or reputation. These acts are: (1) Stafford's abusive calls and profane email to the Company's third party technical support personnel, which allegedly caused a decline in the quality of support the Company received from the provider; (2) an apparently misguided attempt by a retired professional basketball player in EBG's offices and in the presence of a person affiliated with NYIH to claim an ownership interest in NYEG and to review the Company's books and records; (3) Stafford's loud yelling at Reizen during a meeting at NYEG's Offices and subsequent refusal to shake Reizen's hand or talk to him; (4) Stafford's inappropriate conduct during the mediation as described above; and (5) Stafford's having revealed to a former employee of the Company that he had a dispute with EBG and having requested that individual to disclose to him "what was going on" at the Company.

NYIH denies that the allegedly injurious acts done by NYIH or Stafford, either individually or collectively, are such that, in EBG's reasonable opinion, they could have reflected unfavorably on the good name, goodwill, or reputation of the Company or EBG. NYIH dismisses the alleged acts as *de minimis* and not rising to the level that EBG reasonably could believe that they caused a reputational injury to the Company or EBG to a degree that, under the Operating Agreement, would require NYIH to sell its Units in the Company to EBG.

---

[36]     *Id.* § 10.1.5.

16

Specifically, NYIH contends that the allegedly harmful acts could not have caused a reputational injury to the Company or EBG because all the acts occurred "internally, either within [the Company]'s offices, in the context of an internal email, at mediation, or otherwise between the parties."[37] From NYIH's point of view, goodwill or reputation of a company is "not built within the four walls of a company's office, but is a reflection of sentiment" in the public.[38] I disagree. If an owner of a business repeatedly acts in a sufficiently offensive way in front of other employees, even if it all occurs within the company, it is reasonably conceivable that those actions could reflect unfavorably on the good name, goodwill, or reputation of the company.

Generally, I am sympathetic with NYIH's position that at least some, if not all, of EBG's complaints appear picayune. For example, I seriously doubt that the boorish conduct of Stafford at the mediation or the incident involving the former basketball player reasonably could be considered a Triggering Event. I am not prepared at this preliminary stage, however, to rule out the possibility that, taken together with the other alleged misconduct, they conceivably might support the existence of a Triggering Event.

Furthermore, the language of Section 10.1.5 sets a low contractual standard. It does not require, for example, that the injurious acts have occurred in the presence of third parties completely outside the Company. Moreover, to prove that a Triggering Event occurred, EBG needs only show that, in "its reasonable opinion," the act reflects negatively on the good name, goodwill, or reputation of the Company or EBG.

---

[37]     NYIH's Opening Br. 17.

[38]     *Id.*

17

To succeed on its motion to dismiss, NYIH must show that EBG has failed to allege any reasonably conceivable set of facts under which EBG could have formed a reasonable opinion that the conduct of NYIH or Stafford reflected unfavorably on the good name, goodwill, or reputation of EBG, *i.e.,* that NYIH committed a Triggering Event under Section 10.1.5 of the Operating Agreement. It would not be surprising that a more developed factual and legal record ultimately might show that none of the conduct complained of by NYIH or Stafford constitutes a Triggering Event. Based on the claimant friendly standard for a motion to dismiss, however, I conclude that EBG has pled sufficient facts to make it inappropriate to dismiss the first cause of action in its Counterclaim for failure to state a claim.

### 3. Breach of the Operating Agreement

NYIH also seeks dismissal of the second cause of action of EBG's Counterclaim, *i.e.*, that NYIH breached the Operating Agreement. EBG asserts that NYIH breached the Operating Agreement in three ways: (1) NYIH failed and refused to recognize EBG's alleged exclusive authority, under the Operating Agreement, to manage operations of the Company; (2) NYIH improperly disclosed confidential information to a third party—a former employee of NYEG—in violation of Section 18.4 of the Agreement; and (3) NYIH failed to provide timely notice to EBG of the occurrence of the alleged Triggering Events and, therefore, violated Section 10.2 of the Operating Agreement.

I deny NYIH's motion to dismiss EBG's Counterclaim as to the first and third alleged breaches of the Operating Agreement. In the first alleged breach, EBG asserts that NYIH refused to recognize EBG's exclusive day-to-day management authority under

18

the Operating Agreement and that NYIH attempted to usurp such authority. It is apparent from the parties' briefs that they disagree as to what authority each party has under the Operating Agreement. After carefully reading that Agreement, I am convinced that it is at least reasonably conceivably that the contract is ambiguous on this issue. Thus, this aspect of the Counterclaim cannot be dismissed under Rule 12(b)(6) on this ground. As to the third alleged breach, EBG asserts that NYIH failed to inform EBG of the occurrence of the alleged Triggering Events. NYIH, however, denies the occurrence of any Triggering Events; thus, it also denies the need for a notice. As noted above, whether a Triggering Event has occurred is a factual dispute that requires further discovery and factual and legal development. Therefore, I also conclude that dismissal of this aspect of the Counterclaim at this time is inappropriate.

The only remaining aspect of NYIH's motion to dismiss concerns NYIH's alleged breach of Section 18.4.1 of the Operating Agreement, which provides:

> [A]ny information relating to disputes among Members (all such information, "Confidential Information"), shall at all times and for all purposes be confidential . . . and shall not be used for the benefit of [NYIH] or any of its affiliates, except for the purposes of monitoring and managing [NYIH]'s investment in the Company or carrying out its obligations or exercising its rights under the Transaction Documents. [NYIH] . . . shall not at any time use for its own purpose the Confidential Information or disclose, divulge or communicate orally, in writing or otherwise, any of the Confidential Information to any other Person or Persons [except as] may be required to be disclosed by law, legal process (including arbitration) or regulatory requirement . . . .[39]

---

[39]     Operating Agreement § 18.4.1.

19

EBG alleges that, in July 2014, in advance of the anticipated mediation, Stafford told a former employee of the Company that he and NYIH were unhappy with EBG's running of NYEG, that EBG was not fully informing NYIH about the Company's operational details, and that, as a result, NYIH might have to take legal action.[40] Stafford tried to find out from this employee information about the Company's operations and told him that Stafford might need him to appear in court. Because Section 18.4.1 defines "Confidential Information" to include "any information relating to disputes among Members," EBG asserts that NYIH, through Stafford's actions, breached Section 18.4.1 of the Operating Agreement.[41]

NYIH responded with a two-fold defense. First, NYIH avers that the claim of breach became moot when the parties initiated this lawsuit because information about the parties' dispute became public at that time and the former employee would have learned about it regardless. At a minimum, this argument raises factual issues that cannot be resolved on a motion to dismiss. For example, information about this litigation probably did not become public until well after Stafford disclosed the allegedly confidential information to the former employee in July 2014. NYIH did not file its Complaint until October 2014.

---

[40] Countercl. ¶ 43.

[41] *Id.* ¶ 44. EBG further asserts that the breach of the confidentiality obligation constitutes a Triggering Event under Section 10.1.4, which provides that any default of a party's obligations under the Operating Agreement, if not remedied after notice, constitutes a Triggering Event. *Id.* ¶ 45.

Second, NYIH asserts that Stafford made contact with the former employee in the context of a pending dispute as part of an effort by NYIH to monitor its investment in the Company. Section 18.4.1 explicitly provides that NYIH is not prohibited from using confidential information "for the purposes of monitoring and managing [its] investment in the Company or carrying out its obligations or exercising its rights." NYIH claims that it has been frozen out of the Company, that EBG has refused to provide it with information, books, and records to which it is entitled, and that the high expenses of NYEG and EBG's secretive actions have raised its suspicions that EBG has engaged in financial improprieties. NYIH further contends that, in these circumstances, it was "permissible for Tom Stafford to alert the ex-employee to the parties' dispute, and inquire as to what was going at the Company."[42]

It may be true that Stafford acted appropriately in contacting the former employee in an effort to monitor NYIH's investment in the Company, but that would represent a possible defense to EBG's Counterclaim regarding the alleged breach of confidentiality. Whether such a defense has merit, however, cannot be determined on a motion to dismiss. Rather, I find that it is reasonably conceivable, but barely so, that EBG could demonstrate at trial that Stafford's contact with the ex-employee may support a claim of breach of contract. Factual disputes cannot be resolved by a motion to dismiss. For all these reasons, NYIH's motion to dismiss the second cause of action in EBG's Counterclaim also must be denied.

---

[42]      NYIH's Reply Br. 12.

Although I am denying the motion to dismiss the Counterclaim, I do not mean to suggest that I consider any aspect of EBG's Counterclaim likely to succeed on the merits. With that in mind, and assuming NYIH files an amended complaint that is more narrow than its original complaint and involves far fewer defendants, I would not expect to grant a motion along the lines of EBG's previously filed motion to stay the proceedings on NYIH's complaint pending resolution of its Counterclaim. Accordingly, even if EBG files a motion to dismiss or stay all or part of any amended complaint that is filed in the reasonably near future, I still expect the parties to proceed with discovery in accordance with the Court of Chancery Rules. Only a very strong and timely showing by EBG, which currently appears unlikely, would warrant a stay of the primary aspects of the claims by NYIH against EBG that are part of the current complaint. I assume, therefore, that the same observation probably will hold true for a more narrow amended complaint.

## III. CONCLUSION

For the foregoing reasons, NYIH's motion to strike is granted in part in that Paragraph 47 of EBG's Counterclaim is stricken and denied in part as to Paragraphs 7 and 29 for the reasons stated in this Memorandum Opinion. NYIH withdrew its motion to strike the other paragraphs it initially challenged. NYIH's motion to dismiss the Counterclaim for failure to state a claim is denied.

**IT IS SO ORDERED**.